IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| KELLY HUSTEDDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09-4003-CV-C-MJW |
| | ) | |
| MIDWAY ARMS, INC., d/b/a MIDWAY USA, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Kelly Hustedde claims she was fired by defendant Midway Arms, Inc., (hereinafter "Midway Arms") because she had a disability. Defendant Midway Arms has filed a motion for summary judgment on Hustedde's remaining claims under the ADA, and a corresponding claim for punitive damages.[1]

Rule 56(c)of the Federal Rules of Civil Procedure requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[1]This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56.

**Background**

Hustedde was hired by defendant on or about October 29, 2007, and worked in logistics, which included shipping and repacking. She was 23 years of age at the time she was hired. Her position required her to stand all day while regularly pulling products off the shelves, placing them in a tote, sending them down the assembly line, packing products to be mailed, squatting, and reaching products weighing more than twenty pounds by ladder.

On January 7, 2008, upon returning from shoulder surgery and submitting work restrictions for her shoulder, Hustedde was transferred from shipping to the repacking area to accommodate her temporary shoulder restrictions.

On March 5, 2008, Hustedde brought a physician's note, dated February 1, 2008, which set forth medical restrictions for her knees that precluded her from climbing stairs, squatting, kneeling and pushing or lifting more than twenty pounds, all of which were required duties for her position in logistics. The physician's note stated these restrictions would be necessary for six months.

Prior to submitting the physician's note to defendant, Hustedde had complained that the normal functions of her job in logistics were making her knees hurt. She concedes in her deposition that she knew when taking the job in October 2007 that the functions of the job could aggravate her knees. Hustedde stated she needed a job, and therefore, took the job despite such concerns. Hustedde states that although she did not mark any restrictions or disability requiring accommodations when asked such a question on her application and subsequent paperwork submitted to Midway Arms, she told the human resources person of her knee problems and was told that Midway Arms would work with her.

2

As a result of the restrictions set forth in the letter from Hustedde's physician, she was reassigned from the logistics department to the customer services department. This transfer required Hustedde to successfully complete two weeks of call center training. Hustedde failed the customer service call center training program because she received unsatisfactory scores on her calls that were monitored by trainers.

In response to Hustedde's failure to pass the call center training and her medical restrictions precluding her working in logistics, Midway Arms put Hustedde on a temporary leave-of-absence for the duration of her medical restrictions. The leave-of-absence form provided for Hustedde's return to the shipping department on August 1, 2008.

When presented with the leave-of-absence form, Hustedde refused to sign it. Hustedde's complaint claims she was fired. The undisputed documents show Hustedde was put on a leave-of-absence until her medical restrictions were lifted, allowing her return to the logistics department upon expiration of her six months of medical restrictions. Hustedde concedes she was never told she was fired, but rather that when her knees got better, she could return, and admits the expiration date for the leave-of-absence corresponded with her doctor's letter providing that her restrictions would be in place for six months.

Hustedde subsequently was unemployed for six months, during which time she received unemployment benefits. A week after her unemployment benefits expired, Hustedde accepted a position with the University of Missouri. Hustedde's position with the University was a higher paying job than her employment at Midway Arms and included benefits. Hustedde did not seek to reinstate her employment with Midway Arms.

Hustedde's complaint seeks compensatory and punitive damages for her ADA claims.

## Discussion

### ADA Claims

The ADA prohibits an employer from "discriminat[ion] against a qualified individual with a disability because of the disability or such individual in regard to . . . the hiring, advancement or discharge of employees. . . ." 42 U.S.C. § 12112(a). To establish a prima facie case for disability discrimination under the ADA, a claimant must show (1) that she has a disability within the meaning of the ADA; (2) that she is qualified to perform the essential

3

function of the job, with or without reasonable accommodation; and (3) that she has suffered an adverse employment action because of the disability. Epps v. City of Pine Lawn, 353 F.3d 588, 591 (8th Cir. 2003).

*Disability under the ADA*

The ADA defines the term "disability" to include, among other things, "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1). See also Nuzum v. Ozark Automotive Distributors., Inc., 432 F.3d 839, 843 (8th Cir. 2005) (defining disability). A physical impairment includes "any physiological disorder or condition [affecting the] musculoskeletal [body system]." 45 C.F.R. § 84.3(j)(2)(I). In this case, the parties agree that Hustedde's knee condition, which was the basis for the doctor's restrictions presented by Hustedde to Midway Arms, qualified as a physical impairment under the ADA.

"The terms 'major life activities' and 'substantial limitation' must be interpreted strictly to create a demanding standard for qualifying disabled." Gretillat v. Care Initiatives, 481 F.3d 649, 652 (8th Cir. 2007) (citing Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002)). "Major life activities means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). More generally, they include activities that are of central importance to daily life. Gretillat, 481 F.3d at 652; Williams, 534 U.S. at 197. A court should consider the nature, severity, duration and long-term impact of the impairment when deciding whether that impairment substantially limits a major life activity. Gretillat, 481 F.3d at 652. The impairment must be of an extended or permanent duration. Id. (citing Williams, 534 U.S. at 198). Additionally, an impairment is only considered substantially limiting if "an individual is significantly restricted as to the condition, manner or duration under which the average person in the general population can perform that same major life activity." Id. Merely demonstrating that an impairment prevents an individual from performing job functions in the absence of accommodations does not suffice to demonstrate a disability. Id. Under the ADA, working does not mean working at a particular job of a person's choice. Wooten v. Farmland Foods, 58 F.3d 382 (8th Cir. 1995).

4

Here, Hustedde claims her knee condition caused her chronic and persistent pain that limited her major life activities of standing, climbing stairs, squatting, kneeling and sleeping. Hustedde claims these limitations qualify her as disabled under the ADA.

Hustedde claims she began to suffer knee pain after a 1999 car accident. Her knees were not structurally damaged by the accident, but she reported knee pain. In July 2000, Hustedde's doctors stated she was "safe to participate in everything she desires." (Doc. 64, Defendant's Memorandum in Support of Motion for Summary Judgment, Exh. J, Hustedde's medical records.) In November 2000, Hustedde's medical records again reflect the doctor's release for her to participate in things she desires because there was no concern that Hustedde was inherently or structurally damaging her knees. Id. at Exh. K. In 2000, Hustedde participated in basketball and softball sports; in 2001, she underwent a preparticipation sports examination in which she reported she experienced shortness of breath while playing sports, and was cleared to participate in sports at the highest level of contact-collision sports; and in 2002, Hustedde again underwent a school physical examination which noted she plays basketball and softball and that her pain level was a "0" on the pain scale. In 2003 and 2004, Hustedde's medical records show she underwent arthroscopic knee surgery. (Doc. 70, Plaintiff's Suggestions in Opposition to Summary Judgment, Hustedde's medical records.) The records indicate right and left knee meniscal tears were repaired in 2003, and in 2004, a trocar chondroplasty and fat pad debridement were performed. In 2005, Hustedde again had diagnostic arthroscopic knee surgery. Hustedde's doctors have since diagnosed her with patellofemoral pain syndrome.[2]

In 2006, Hustedde started receiving a new treatment for her knee pain, Euflexxa injections. Hustedde's medical records show these injections were quite helpful in relieving her pain. (Doc. 64, Defendant's Memorandum in Support of Motion for Summary Judgment, Exh.

---

[2]Patellofemoral pain syndrome is a condition where an individual feels pain under the kneecap mostly during exercise, movement, or prolonged sitting. It is most common during weight-bearing activities like running, and is often increased by going down stairs or hills. See Doc. 82, Defendant's Reply, Exh. U, Health Sciences Library of New York Upstate Medical University (detailed definition and discussion of patellofemoral pain syndrome). See also Mayoclinic.org, February 10, 2010 Medical Edge Newspaper Column (discussing patellofemoral pain syndrome condition, including symptoms, causes and treatment).

E.) In June 2006, Hustedde's medical records show she had little or no pain and was quite pleased with her outcome from the Euflexxa injections. Hustedde was noted as having a good stable knee with a full range of motion and doing quite well. Hustedde's January 23, 2007 medical records state that her pain had been completely eliminated for about a year based on the Euflexxa injections she had received. The records affirm no structural damage, and recommended repeat of three injection series of Euflexxa "since it was so incredibly helpful last time." Id. at Exh. G. Hustedde's January 30, 2007 medical records show her returning for her third Euflexxa injection, and that she stated she already felt much better since her first two injections and was "very happy." Id. at Exh. H. The record further shows Hustedde was told she could return whenever she desires additional Euflexxa injections. It was noted that the relief of the last Euflexxa injection series had lasted about a year, and that Hustedde was expected to be able to go another year without needing to return for additional injections.

In 2008, during the time Hustedde was employed with Midway Arms, her medical records reflect that it had been a little more than a year since her last Euflexxa injection series and that she was returning to the University Physicians to again receive the injection series to relieve her knee pain. On March 25, 2008, Hustedde's medical records show she received her second Euflexxa injection in the usual series of three. The record specifically states Hustedde's chronic patellofemoral pain was being controlled with the injections, and that at the time of her second injection, she was reporting her pain at a level one on the pain scale.

In her deposition, Hustedde states these medical records reflecting that her pain was being very well controlled if not completely eliminated by the Euflexxa injections are incorrect. However, Hustedde cannot create a material issue of fact on this issue by contradicting her own medical records. Moreover, the December 14, 2009 medical expert letter of Dr. Kevin Marberry, M.D., submitted by Hustedde, which provides an overview of her knee pain treatment history at University of Missouri Health Care and an opinion concerning her prognosis for recovery, specifically affirms that the Euflexxa injection series has been effective in treating Hustedde's knee pain, and that Hustedde could continue these injections indefinitely if her knee pain persists.

While Hustedde may still suffer some very minor knee pain, and more severe pain when her Euflexxa injections begin to wear off each year, her medical records show the injections she

6

is receiving virtually eliminate all her pain for a period of approximately one year. Further, the doctors have stated that Hustedde can receive the injection series up to once every six months, if needed, for any returning pain.

Hustedde has failed to come forward with evidence to support her contention that her knee pain is severe enough to substantially limit her in a major life activity. Hustedde's history of knee pain and treatment in the years between 1999 and 2005, before Hustedde started receiving the Euflexxa injections, does not merit a finding of disability, when beginning in 2006, prior to Hustedde working for Midway Arms, her physical impairment of knee pain had been successfully controlled with the use of medication, specifically the Euflexxa injection series. This finding is consistent with the law in effect at the time Hustedde's claims arose in 2007 and 2008, as set forth above, which requires this court to consider the effects of any mitigating measures. Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 565-66 (1999).[3] At the time Hustedde submitted her physician's note restricting her stair climbing, squatting, kneeling, and lifting/pulling greater than twenty pounds, a little more than a year had passed since her last Euflexxa injection series. The records show that Hustedde was most likely experiencing pain because she was due for another series of Euflexxa injections. Hustedde began another series of Euflexxa injections, as advised by her doctor, when her knee pain returned. By March 25, 2008, Hustedde had received her second injection of the series of three Euflexxa injections and reported a pain level of only one on the pain scale. Here, the Euflexxa injection series was clearly mitigating the limitations Hustedde alleges she had because of knee pain.

---

[3] See Kirkeberg v. Canadian Pacific Railway, No. 09-1422, slip op. (8th Cir. Aug. 27, 2010). Amendments to the ADA that took effect on January 1, 2009, supercede the Supreme Court's prior admonition to consider the ameliorative effects of mitigating measures, see Sutton v. United Airlines, Inc., 527 U.S. 471, 482 (1999), and to construe narrowly the ADA's "substantially limits" language, see Toyota Motor, 534 U.S. at 196-97. See ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(b), 122 Stat. 3553, 3554. However, Hustedde commenced this action before the amendments became effective, and she has not argued that they should apply to this case. Cf. Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994) (concluding the if a statute would "increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," the presumption is that "it does not govern absent clear congressional intent favoring such a result.")

Additionally, nothing in the doctor's letter of February 1, 2008, setting forth Hustedde's medical restrictions due to her knee pain, indicated she was substantially limited in the activities being restricted. The letter only indicated that Hustedde had the following restrictions: "[n]o stair climbing, squatting, or kneeling, no lifting greater than 20 [pounds], and no pushing items over 20 [pounds]," with the restrictions being in place "for approximately six months." (Doc. 64, Defendant's Memorandum in Support of Motion for Summary Judgment, Exh. P.) Hustedde has come forward with no medical evidence for the years after she started receiving Euflexxa injections for pain, beyond the February 1, 2008 letter temporarily restricting her work activities for six months, which would indicate that she was unable to perform any major life activity. "To be substantially limited, an impairment 'must be for an extended or permanent duration.'" Kirkeberg, No. 09-1422, slip op. at 8 (quoting Gretillat, 481 F.3d at 652). Hustedde has failed to come forward with evidence that the doctor's limitations set forth in the February 1, 2008 letter submitted on March 5, 2008, would be extended or permanent in duration.

Moreover, the Eighth Circuit has found that the limitations of crawling, kneeling, crouching and squatting as cited as restricted for six months by Hustedde's doctor are not major life activities. Gretillat, 481 F.3d at 654. Neither are restrictions on ladder climbing and stairs, Otting v. J.C. Penny Co., 223 F.3d 704, 710 (8th Cir. 2000), or restrictions on lifting or pushing more than twenty pounds. Conant v. City of Hibbing, 271 F.3d 782, 785 (8th Cir. 2001). As for standing and sleeping, Hustedde has come forward with no medical records or other evidence to support her assertion that she was limited in these major life activities. The mere fact that the doctor's February 1, 2008 letter restricted Hustedde from doing the duties of her job in the logistics department at Midway Arms for a period of six months is insufficient to demonstrate she was substantially limited in a major life activity or that her knee pain was a disability under the ADA. Gretillat, 481 F.3d at 653.

Further, Hustedde's own actions in not indicating on her employment forms with Midway Arms that she was disabled or needed any sort of accommodation in order to work in a warehouse position, when such forms specifically asked these questions, further contradict her claims of being disabled. As do also Hustedde's continued recreational activities of riding a personal watercraft, a horse, and a four-wheeled ATV.

8

Finally, it is notable that upon expiration of Hustedde's unemployment benefits and temporary leave-of-absence from Midway Arms, she did not return, or seek to return, to Midway Arms for employment, but sought and obtained a higher paying job at the University of Missouri. Significant reduction in a broad spectrum of employment opportunities is required to show substantial limitation. See Wood v. Crown Redi-Mix, inc., 339 F.3d 682, 686 (8th Cir. 2003). Hustedde's immediate re-employment upon expiration of her unemployment payments does not support her claim of substantial limitation. See Epps v. City of Pine Lawn, 353 F.3d 588, 592 (8th Cir. 2003). An inability to perform a single particular job because of a physical impairment is not sufficient to establish a substantial limitation of a major life activity. Id.

In giving Hustedde the benefit of all reasonable inferences, she has failed to come forward with sufficient evidence to raise a genuine issue of material fact as to whether her knee pain substantially limits her in a major life activity such that she is disabled. No reasonable jury could conclude that Hustedde's physical impairment of knee pain, patellofemoral pain syndrome, fulfills the requirements for a disability under the ADA.

*Essential Functions of Job and Adverse Employment Action*

The court further notes that even if Hustedde had a disability under the ADA, she has failed to come forward with evidence that she could perform the essential functions of her job, or that she was fired or otherwise suffered an adverse employment action because of her disability.

Hustedde's deposition testimony concedes that while in logistics at Midway Arms, she had to ask other employees to do certain essential functions of her job that she was unable to do because of her knee pain. An employer is not required to assign tasks to other employees to reallocate essential functions of an employee's job. Epps, 353 F.3d at 591. Additionally, Hustedde has not come forward with evidence to support that at the time she submitted her medical restrictions to Midway Arms on March 5, 2008, she remained able to perform the essential functions of her position despite the medical restrictions. Rather, the undisputed evidence shows that essential functions of Hustedde's logistics position were precluded by her doctor's medical restrictions.

The evidence shows that Hustedde was not fired as she claims, but rather, was put on a temporary medical leave-of-absence. She was put on the leave-of-absence after submitting the

9

letter from her doctor which restricted her from doing essential functions of her warehouse position in logistics, and then subsequently failing the training for the alternative position offered to her by Midway Arms in the customer service call center.[4] Cf. 42 U.S.C. § 12112(b)(5)(A); Nichols v. ABB DE, Inc.,324 F. Supp. 2d 1036, 1044 (E.D. Mo. 2004) (no requirement to reasonably accommodate someone who is not a qualified individual with a disability under the ADA). The leave-of-absence was set to expire on August 1, 2008, which Hustedde concedes was the date her doctor noted as the expiration of her work restrictions due to her knee pain. The evidence shows that Hustedde's statement that her knee pain would never get better, and therefore, the leave-of-absence was essentially firing her from Midway Arms is inconsistent with the evidence in the record. There is insufficient evidence to support claims that Hustedde suffered an adverse employment action as required by the ADA.

**Conclusion**

In taking the evidence in the light most favorable to Hustedde, she has failed to come forward with sufficient evidence to support a prima facie claim under the ADA. No reasonable jury could find that Hustedde suffered from a disability as defined by the ADA, or was discharged or otherwise subject to an adverse employment action because of a disability. See e.g. Wooten, 58 F.3d at 386 (employer does not regard employee as disabled when it lays him off based on physical restrictions imposed by a doctor when no jobs accommodating those restrictions were available). See also Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 684 (8th Cir. 2003); Nichols v. ABB DE, Inc., 324 F. Supp. 2d 1036 (E.D. Mo. 2004) (summary judgment for employer on employee's ADA claim where employer laid off employee because of medical restrictions which limited employee to lifting no more then 40 pounds, and restricted bending, twisting and stooping). There is no dispute of material fact as to Hustedde's ADA claim, and Midway Arms is entitled to judgment as a matter of law.

---

[4]Midway Arms attempted to accommodate Hustedde's medical restrictions by reassigning her from her position in the warehouse to a position in the customer service call center. The evidence shows that Hustedde failed the two-week training mandatory for the call center position.

## Punitive Damages

Count III of Hustedde's complaint does not state a substantive claim, but rather is a claim for punitive damages based on Midway Arms' alleged violations of the Americans with Disabilities Act and the Missouri Service Letter statute. Summary judgment has been granted on behalf of Midway Arms on Hustedde's service letter claim, and because this court is also granting summary judgment on the ADA claims, summary judgment is granted on Count III as well.

## Motion to Reopen Discovery/Supplement Motion for Summary Judgment

On September 2, 2010, Midway Arms filed motions to supplement motion for summary judgment and to reopen discovery. Upon consideration, and in light of the findings of this court, defendant's motions are denied.

IT IS, THEREFORE, ORDERED that defendant Midway Arms' September 2, 2010 motions to supplement their motion for summary judgment and to reopen discovery are denied. [88, 89] It is further

ORDERED that defendant Midway Arms' motion for summary judgment is granted and plaintiff Hustedde's claims are dismissed. [59]

Dated this 15th day of September, 2010, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*

MATT J. WHITWORTH
United States Magistrate Judge